# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:07CR53

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| DAVID LaMONT HENSON, | ) | |
| | ) | |
| Defendant. | ) | |

THIS MATTER coming on to be heard before the undersigned, pursuant to a "Motion for Modification of Bond" (#18), filed by the defendant and from the evidence presented and the records in this cause, the court makes the following:

**Findings.** A bill of indictment was filed on June 4, 2007 which contained the following counts against the defendant: 1) possession of a firearm by a convicted felon; 2) possession of methadone with the intent to distribute; 3) possession of a firearm during and in furtherance of a drug trafficking crime; 4) possession of a shotgun not registered to the defendant modified to have a length of less than 26-inches; and 5) possession of firearms by a convicted felon. A detention hearing was held on June 22, 2007 at which time the undersigned entered an oral order detaining the defendant which was followed by a written order which contained detailed findings. The order is incorporated herein by reference.

In the "Motion for Modification of Bond", the defendant alleges that "Defendant's medical condition is such that he cannot receive the quality of care he received before he was

ordered detained" and that "members of Burnsville and Yancey County, North Carolina have offered statements that they know Defendant and that he is not considered a danger to his community" and thirdly, that "at the time of his arrest on September 12, 2006, he had a valid prescription for the methadone found on his person. This factor materially affects the strength of the Government's case against him".

In regard to his first contention, the defendant presented over 100 pages of medical records concerning the defendant's medical condition. This court has read all of those documents which were marked by the court as defendant's exhibits D-1 and D-3. These medical records show that the defendant has had several operations on both his right foot and ankle and his left foot with internal fixation devices having been placed in the defendant's right ankle. On June 16, 2007 the defendant reported to his treating physician that he was on his motorcycle when the motorcycle fell over and that he sustained additional injury to his ankle. His treating also notes that on April 9, 2007 the defendant went to an emergency room treating department and a history was taken that the defendant had fell down stairs and reinjured his right foot. The defendant was treated initially with a cast, however, in a report made on April 30, 2007 by the defendant, the defendant stated that he went fishing on Lake James and fell into the lake with his cast on and that the cast come off or was taken off by the defendant himself. The physician recommended that the defendant apply a "CROW boot walker" which the defendant evidently already had in his possession. On June 11, 2007, his physician stated "I think he can start to increase his activities as tolerated. He can start to

2

wean out of the camboot, return to see me if problems occur". On June 20, 2007, his treating physician provided a written statement which the court has marked as Exhibit D-3 which states, "Patient should not walk on uneven ground, (gravel etc.) or stairs at home due to his right leg injury. He does wear a camboot". This statement was provided due to a request made by the defendant's wife that the physician provide such a statement so that funds could be obtained to construct a ramp to the defendant's home.

The defendant also presented exhibits which the court has marked as Exhibits D-4A, D-4B and D-4C. These are a form of petition signed by various persons who identify themselves as either "members of the Lincoln Park community" D-4A; "members of the Burnsville Community" D-4B, or persons who are not identified in what capacity that they have signed. The court has read these exhibits and finds that there are several persons whom the court personally knows as being good citizens in the Yancey County community that have signed these petitions. However, the court has also recognized persons who are convicted felons or have substantial criminal records. These findings are based upon this court's 28 years of experience in practicing law in Yancey County, NC.

Defendant's counsel further presented a document which the court marked as Exhibit D-2, which is a record of prescriptions filled by CVS pharmacy #14196. These records show the filling of prescriptions presented by the defendant from a prescriber named Wendy Leogrande. These prescriptions show that on July 27, 2006 the defendant had a prescription filled for 900 tablets of methadone and 90 tablets of oxycodone. On July 28th the defendant

3

had a prescription filled for 300 tablets of oxycodone. On August 25, 2006 the defendant had a prescription filled for 380 tablets of methadone and 60 tablets of oxycodone. An examination of the medical records presented by the defendant (D-1) shows that the defendant did not at any time advise the physicians treating his ankle condition that he was taking the controlled substances methadone or oxycodone.

**Discussion**. 18 U.S.C. § 3142(f)(2) provides, in regard to a detention hearing, as follows: "The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officers finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release which would reasonably assure the appearance of such person as required and the safety of any other person and the community." Out of an abundance of caution, the undersigned has considered the defendant's present motion in that regard and has reconsidered the evidence presented in this matter as the evidence relates to the factors the court must consider in determining whether or not there are conditions of release that would assure the safety of any other person and the community as set forth under 18 U.S.C. § 3142(g). As to those factors, the court finds as follows, as to factor:

(g)(1) The nature and circumstances of the offense charged involve a narcotic drug and also involve a crime of violence. The defendant is charged with two counts of being a felon in possession of a firearm. These offenses are considered in the Fourth Circuit to be crimes of violence. 18 U.S.C. § 3142(g)(1)

(g)(2) The weight of the evidence against the person appears to be strong and significant. The defendant is charged with two counts of being a felon in possession of a firearm, including a sawed-off shotgun. These offenses are considered in the Fourth Circuit to be crimes of violence. 18 U.S.C. § 3142(g)(1). The defendant has now presented evidence that he had a valid prescription for methadone. However, as shown by the detention order previously entered in this matter, it is the possession by this defendant of firearms that was of concern to the court and not whether or not he had in his possession methadone for sale. Upon considering the evidence presented by the defendant, it is apparent that this defendant had prescriptions for what can only be described as a massive amount of methadone and other drugs which would have required the defendant to consume almost 30 pills per day. As a result, the court continues to be of the opinion that the weight of the evidence is strong and significant.

(g)(3) The history and characteristics of the person show that the defendant has presented the contention that he cannot obtain medical treatment which is the quality of care he received before he was ordered detained. The defendant has presented over 100 pages of medical records. The court has considered those records. It appears that the defendant does have an injury to his right foot and also treatment of injuries to his left foot. There is nothing in the evidence presented by the defendant that would support the contention that he cannot receive the same quality of care while he is detained that he received before. The detention facility can, if it is deemed necessary, send him for treatment to his treating physician or to obtain treatment through another treating physician. The records presented show that the

limitations placed on the defendant such as not walking on uneven ground, or gravel, or stairs, are conditions that he will not face at all in the detention facility. Indeed, the defendant's confinement in the treatment facility will place him away from such difficulties and may allow the defendant's foot to properly heal. The court has also considered the fact that in the pretrial services report the defendant had told Probation Officer Angela Pickett that "he is currently prescribed medication for anxiety, depression, and leg cramps". The defendant never described that he had prescriptions for methadone or oxycodone. Methadone and oxycodone are not drugs that are prescribed for the conditions of anxiety, depression or leg cramps.

(g)(4) The danger to any person or the community that would be posed by the person's release continues to indicate that the release of the defendant would create a danger to any other person or the community. The evidence presented by the defendant does not support the contentions that his release would not pose a danger, particularly when compared to the findings made by the undersigned in the detention order filed on June 25, 2007. The defendant has a substantial criminal record, including what appears to be two felony convictions, one being for maintaining a vehicle or dwelling place for the keeping of a controlled substance and the other being felony possession of a schedule II controlled substance. He has persisted in possessing firearms. At the time of his arrest on September 12, 2006, the defendant had in his possession loaded firearms as noted in the previous order. The defendant was instructed in writing at the time of his release by the State District Judge, not to have in his possession any type of firearm or weapon. The defendant signed a

document acknowledging that condition. Later, on February 17, 2007, at the time of the search of the defendant's dwelling, he was found in possession of numerous firearms, including a sawed-off shotgun. As stated in the previous order, it appears the defendant is determined to possess firearms despite laws prohibiting such possession and further, despite written directives from a judicial officer ordering him not to possess firearms. There can be no other conclusion but that the defendant will not comply with any condition or combination of conditions that would assure that he would not be in possession of firearms.

Based upon the foregoing, the undersigned has determined that there has been any evidence that has been produced that has a material bearing on the issue of whether or not there are conditions of release that would assure the safety of any other person and the community. This court finds that such conditions do not exist and that the release of the defendant would create a risk of harm to the community.

**ORDER**

IT IS, THEREFORE, **ORDERED** that the motion of the defendant entitled, "Motion for Modification of Bond" (#18) is hereby **DENIED** and that the defendant be detained pending further proceedings in this matter.

Signed: August 16, 2007

Dennis L. Howell
United States Magistrate Judge